IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LATOYA M. MOORE, AIS#265588,   ) | |
|   ) | |
|       Plaintiff,   ) | |
| v.   ) | CASE NO.: 2:21-cv-00517-MHT-CSC |
|   ) | |
| JULIA TUTWILER PRISON, SGT.   ) | |
| MICHAEL CHAMBERS, and   ) | |
| WARDEN LAGRETA MCCLAIN   ) | |
|   ) | |
|       Defendants.   ) | |

## **DEFENDANT CHAMBERS' ANSWER AND SPECIAL REPORT**

COMES NOW, Defendant Michael Chambers ("Chambers"), through undersigned counsel, and in accordance with this Honorable Court's Orders (Docs. 11, 17, 22), provides this answer and special report.

## **PARTIES**

1. Plaintiff Latoya M. Moore is an inmate of the Alabama Department of Corrections incarcerated at Julia Tutwiler Prison for Women in Wetumpka, Alabama.

2. Defendant Julia Tutwiler Prison is a correctional facility in Alabama's prison system.

3. Defendant Michael Chambers is a former ADOC Correctional Sergeant who was assigned to Tutwiler at the time of the event alleged by Plaintiff in this lawsuit.

4.      Defendant Warden Lagreta McClain is an ADOC Warden assigned to Tutwiler at the time of the event alleged by Plaintiff in this lawsuit.

## PLAINTIFF'S CLAIM

Plaintiff's complaint asserts a single claim under 42 U.S.C. § 1983 for Eighth Amendment excessive force alleging that on July 17, 2021, Defendant Chambers "walked aggressively towards [her] during inmate pill call and violently punched [her] in [the] face." (Doc. 1 at 3).  Plaintiff states this caused a busted lip, black eye, and chipped tooth, and she asks that Chambers be terminated from ADOC employment and for compensation for her legal affairs pertaining to this case and for pain and suffering.[1]  (Doc. 1 at 4).

## DEFENDANT CHAMBERS' ANSWER

1.      Plaintiff failed to exhaust her administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and her complaint should be dismissed.

2.      The complaint fails to state a claim against this Defendant upon which relief can be granted.

3.      This Defendant denies that he used excessive force or that he violated Plaintiff's constitutional rights.

---

[1] Defendant Chambers resigned from employment with ADOC on October 4, 2021. (Exhibit 8 at 4).

4.    This Defendant denies each and every material allegation of the complaint and demands strict proof thereof.

5.    The claim for damages is barred by PLRA 42 U.S.C. § 1997e(e) and the alleged injuries are de minimis.

6.    This Defendant is immune from suit under the Eleventh Amendment to the United States Constitution.

7.    This Defendant is immune from suit due to qualified immunity.

8.    This Defendant is immune from suit due to state-agent immunity.

9.    This Defendant is entitled to sovereign immunity under Article 1, § 14 of the Alabama Constitution (1901).

## EXHIBITS

The following exhibits are provided regarding Plaintiff's claim:

Exhibit 1 - Duty Officer Report;

Exhibit 2 - Incident Report;

Exhibit 3 - Statements of Defendant Chambers and Officer Richards;

Exhibit 4 - Body Chart and Progress Note;

Exhibit 5 - Quinetter Smith Affidavit and photos of Plaintiff;

Exhibit 6 - Tina Tyler Affidavit and grievance procedure and grievance;

Exhibit 7 - Alexandria Richards Affidavit; and

Exhibit 8 - Michael Chambers Affidavit.

## STATEMENT OF FACTS

On July 17, 2021, at approximately 8:00 p.m., Defendant Chambers, the Second Shift Commander at Tutwiler, was clearing and locking down the hall in the main building to take a death row inmate to healthcare. (Exhibit 1). Defendant Chambers gave Plaintiff several orders to clear the hall, words were exchanged, and Plaintiff would not comply. Defendant Chambers walked toward the water cooler and when Plaintiff threw water on him, he struck her in the facial area. (Exhibits 1–2). (Exhibit 2 redacted for security reasons).

Officer Richards was in the hall and witnessed what occurred. She stated that Defendant Chambers gave Plaintiff several orders to clear the hall, but Plaintiff would not obey. Plaintiff was being hostile and making statements to Defendant Chambers that "I can f- your bitch" and "get more p- than you," (Exhibit 3 at 3) and then asked Officer Richards "what the f- you got to say." (Exhibit 3 at 3; Exhibit 7 at 3). Plaintiff then filled up a plastic cup with water from the cooler and threw it on Defendant Chambers who responded using force by hitting Plaintiff in the face with a closed fist. (Exhibit 3 at 3; Exhibit 7 at 3). Plaintiff then took her regularly scheduled medicine and went to her dorm. (Exhibit 3 at 3; Exhibit 7 at 3). According to Officer Richards, Plaintiff did not look injured or act like she was injured, and Richards did not see any blood, bruising, swelling, or visible injuries. (Exhibit 7 at 3).

After Plaintiff returned to her dorm, she was taken to health care for a body chart approximately forty-five minutes later.[2]  LPN R. Wilson completed a body chart noting a small laceration on Plaintiff's left nostril, slightly swollen lip on the left side and a chipped tooth.  (Exhibit 4 at 2).  There was no medical follow up, medicine prescribed, or treatment following the incident.  Photographs of Plaintiff were taken by Correctional Lieutenant Quinetter Smith between July 17 and July 19, 2021.  (Exhibit 5).[3]

On July 19, 2021, Plaintiff filed a grievance through the Tutwiler grievance procedure against Defendant Chambers which was handled as an Emergency Grievance because it dealt with complaints of physical force.  (Exhibit 6 at 3). Tutwiler Institutional Grievance Officer Tina Tyler undertook an investigation of the grievance, which included interviewing Plaintiff, and on July 20, 2021, IGO Tyler responded to Plaintiff that the grievance had been reported to the Executive Staff. [4]  Plaintiff did not report any injuries from the incident with Defendant Chambers when interviewed by IGO Tyler.  (Exhibit 6 at 3).

---

[2] Defendant Chambers immediately self-reported the incident to Warden McClain and was assigned to the annex for the remainder of the shift and Sgt. Speaks came from the annex to take over responsibilities at the main facility, which included sending inmate Moore to healthcare for a body chart.  (Exhibit 2 at 2).

[3] Photographs have been cropped to remove irrelevant background information.

[4] ADOC Law Enforcement Services Division also conducted an investigation and requested the case be closed and referred to the Bureau of Professional Standards and Warden Wright for administrative action.  (Exhibit 2 at 3).

5

Under the Inmate Grievance Procedure, if an inmate is dissatisfied with the IGO's response, the inmate may appeal to the Departmental Grievance Officer, who is located at ADOC's office in Montgomery, within five calendar days of the date of the response. (Exhibit 6 at 4). Plaintiff did not appeal the response to her grievance, although she should have under the policy if she was not satisfied with the IGO's response. (Exhibit 6 at 4).

## ARGUMENT

### I.    Plaintiff failed to exhaust her administrative remedies

Plaintiff's failure to exhaust the grievance process was not a mere procedural nicety but a statutory precondition to filing a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.") (internal quotations and citations omitted); *see also*, *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (affirming dismissal of inmate Bryant's lawsuit because even though he properly filed a grievance, he failed to exhaust all of his administrative remedies by timely appealing under the SOP); *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (holding that the PLRA's exhaustion requirement contains a procedural default component requiring prisoners to timely meet the deadlines or good cause standards of the administrative procedures before filing a federal claim).

6

"Section 1997e(a) provides that '[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Johnson*, 418 F.3d at 1155; 42 U.S.C. § 1997e(a). "This rule applies to all inmate suits [including those] alleging excessive force." *Bryant*, 530 F.3d at 1372. "Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the § 1997e(a) requirement." *Mason v. Bridger*, 261 F. App'x 225, 228 (11th Cir. 2008); *Johnson*, 418 F.3d at 1156 ("[T]he PLRA means that inmates must exhaust administrative remedies so long as there is the possibility of at least some kind of relief.").

"Therefore, when a state provides a grievance procedure for its prisoners, ... an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Bryant*, 530 F.3d at 1372–73 (internal citations omitted). Through the PLRA, "Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit." *Johnson*, 418 F.3d at 1155.

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some

7

instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Bryant*, 530 F.3d at 1375 (quoting *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002)); *see also, Johnson*, 418 F.3d at 1156 (summarizing seven policy reasons favoring an exhaustion requirement).

The Tutwiler Inmate Grievance Procedure provides a two-step administrative process for handling Plaintiff's complaint, and the PLRA required Plaintiff to fully exhaust both steps before commencing this lawsuit. *Bryant*, 530 F.3d at 1378 ("prisoners must properly take each step within the administrative process") (internal quotation marks omitted). While Plaintiff initiated the process, she did not complete it and this requires dismissal of her lawsuit. *Mason*, 261 F. App'x at 229 (inmate's "failure to appeal the denials of [his] grievances is also fatal to consideration of his claim on the merits"); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (concluding that a prisoner who declined to appeal an untimely grievance failed to exhaust his administrative remedies).

Plaintiff's federal lawsuit should be dismissed for failure to exhaust her administrative remedies.

## II.    Plaintiff's claim does not constitute Eighth Amendment excessive force

While claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment prohibition against cruel and usual punishment, not every use of force rises to a constitutional violation. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition against cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992) (internal quotations and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that the prison official "act[ed] with a sufficiently culpable state of mind." *Id.* For the objective component, the plaintiff must show that the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Plaintiff's claims fail to establish either of these components and her request for damages for pain and suffering is not recoverable under the PLRA under these circumstances.

9

**A.     The subjective requirement is not satisfied**

The Eighth Amendment forbids the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim for excessive force, Plaintiff must prove that Defendant Chambers applied force "maliciously and sadistically for the very purpose of causing harm." *Campbell*, 169 F.3d at 1374 (internal citation omitted). "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Campbell*, 169 F.3d at 1374. To determine whether the officer applied force maliciously and sadistically for the very purpose of causing harm, the court considers the following factors: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of facts known to them, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of injury. *Miles v. Jackson*, 757 F. App'x 828, 829 (11th Cir. 2018) (per curiam); *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

When evaluating whether the force used was excessive, court's give a wide range of deference to prison officials acting to preserve discipline and security. *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7. "Prison guards may use force when necessary to restore order and need not wait until

disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533.

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Id.* (quoting *Johnson v. Glick*, 481 F.2d at 1033).

Under the subjective component, Plaintiff has not established a constitutional violation. Plaintiff refused to obey orders to clear the hall. She was being hostile and creating a disturbance. Rather than complying with the orders to clear the hall so a death row inmate could be taken to heath care, Plaintiff was defiant and hostile and proceeded to fill a cup of water and throw it on Defendant Chambers, who responded by hitting her in the face. While other uses of force may have been a more appropriate response, the spontaneous reaction was made under circumstances where force was authorized. *Bennett*, 898 F.2d at 1533 (once the prisoner created a disturbance by failing to follow instructions and shouting obscenities, grabbing Bennett by the throat and shoving him against the prison bars did not support an inference of wanton infliction of pain). The relationship between the need and the amount was not disproportional where the plaintiff was not injured nor showed signs of being injured. Officer Richards recounted what happened next:

> After this, inmate Moore then took her medicine and went to her dorm. When she was hit, inmate Moore did not grab her face or look injured

or act like she was injured. The pill call window is at healthcare and inmate Moore did not ask for any medical attention. I was standing right there, and I did not see any blood, bruising, swelling, or visible injuries. I was off work for a couple of days but when I returned to work, inmate Moore never said anything about being injured and never acted like she had been injured.

(Exhibit 7 at 3). The balance of the factors also weighs against finding a constitutional violation. Defendant Chambers applied no other force, he immediately inquired if Plaintiff wanted healthcare to perform a body chart, and he self-reported the incident to the warden on call who promptly reassigned Defendant Chambers to the annex. Furthermore, Plaintiff suffered no lasting or serious physical injuries, which also supports a conclusion that the amount of force used was not excessive. *See Pearson*, 665 F. App'x 858, 863 (11th Cir. 2016) ("The extent of injury remains a relevant consideration and may provide an indication of the amount of force applied, but '[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.'"); *see also, Johnson v. Moody*, 206 F. App'x 880, 884–86 (11th Cir. 2006) (per curiam) (affirming summary judgment because officer who kicked metal tray shut on inmate's hand causing a minor injury did not use force maliciously and sadistically for the very purpose of causing harm); *Miles v. Jackson*, 757 F. App'x at 830 ("The officers did not apply their use of force inside the jail cell maliciously or sadistically.") *McBride v. Rivers*, 170 F. App'x 648, 656–57 (11th Cir. 2006) (per curiam) (although the defendants could have used less force, McBride failed to produce evidence showing that these measures were taken

12

maliciously and sadistically for the very purpose of causing harm) (internal quotations omitted); *Boyd v. Bush*, 2011 WL 4101509, *16 (M.D. Ala. Jul. 11, 2011) (the record is devoid of evidence that the defendants used force maliciously and sadistically for the very purpose of causing harm where the inmate had disobeyed several orders, was combative and hostile and posed a threat to safety).

The evidence, viewed in a light most favorable to Plaintiff, does not support a wanton infliction of pain for a claim of excessive force.

**B.     There is no objectively harmful constitutional violation**

Plaintiff's claim also does not satisfy the objective component of an excessive force claim.   Under the objective component, the alleged wrongdoing must be "objectively harmful enough to establish a constitutional violation."   *Hudson*, 503 U.S. at 8–9 (not "every malevolent touch by a prison guard gives rise to a federal cause of action.").   Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve force that is "repugnant to the conscience of mankind."   *Id.*   "[A]n injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than *de minimis* injury."   *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *abrogated on other grounds by DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021).

Construing the allegation and evidence in a light most favorable to Plaintiff, Defendant Chambers' response was no more than a de minimis use of force causing

13

no more than a de minimis injury.  Under the circumstances of this claim, the use of force was "not of a sort repugnant to the conscience of mankind," *Hudson*, 503 U.S. at 10, but was more similar to a push or shove, especially given that some use of force was authorized given Plaintiff's conduct and repeated failure to obey orders. Plaintiff's claim of suffering a busted lip, black eye, and chipped tooth, do not rise to the level of a constitutional violation.  *E.g., Smith v. Secretary Department of Corrections*, 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam) (affirming summary judgment because under the inmate's version, the attack was no more than a de minimis use of force causing only minimal swelling around the left eye); *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (inmate's claim for being beaten and slapped after restrained causing bloody nose and small laceration and no lasting injury did not rise to the level needed to constitute an Eighth Amendment violation); *Tate v. Rockford*, 497 F. App'x 921, 924–25 (11th Cir. 2012) (per curiam) (use of force after inmate created disturbance and refused to obey commands causing de minimis injuries of a laceration on his forehead, small abrasions and cuts, and a swollen right eye did not amount to excessive force); *Johnson v. Moody*, 206 F. App'x 880, 885 (11th Cir. 2006) (per curiam) (the minor nature of injury from the officer pushing or kicking a metal try door on inmate's hand was not objectively, sufficiently serious to constitute a constitutional claim where medical records indicated inmate was given a tetanus shot, treated with

14

bandages, and non-prescription pain relievers); *Mabry v. Moore*, 2015 WL 5130976, *6 (N.D. Ala. Aug. 31, 2015) (pushing plaintiff in the torso from argument neither the officer or inmate would walk away from causing inmate a busted lip and knot on his head with no follow up treatment was a de minimis use of force warranting summary judgment for the officer); *Hall v. Leavins*, 2009 WL 2905912 (N.D. Fla. Sept. 4, 2009) (the amount of force was insufficient as a matter of law to support an excessive force claim under the inmate's version of the facts where tender wrist, superficial abrasions on knee and forehead, a hematoma on the head and bruise and swelling on leg were the type of injuries that would be treatable at home by the ordinary citizen and indicate that the use of force was not objectively unconstitutional).

Plaintiff's claim of injury, for which she never sought any medical treatment, never requested or needed any medication, and never made any follow up for medical care whatsoever, was not objectively, sufficiently serious for an Eighth Amendment claim for excessive force.  (Exhibit 4 at 2–3).

C.    **The PLRA prohibits recovery for pain and suffering**

Plaintiff seeks Defendant Chambers' termination or removal from ADOC premises, compensation for her legal affairs pertaining to this case, and compensation for pain and suffering.

15

Defendant Chambers, having resigned, no longer works for ADOC. Plaintiff has no costs associated with her case and none would be recoverable at this juncture even if she did. Lastly, 42 U.S.C. § 1997e(e) bars claims for mental or emotional injury suffered while in custody when the plaintiff has not suffered more than de minimis injury. *Harris v. Garner*, 190 F.3d. 1279, 1286 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in relevant part*, 216 F.3d 970 (11th Cir. 2000) ("hold[ing] that in order to satisfy section 1997e(e), the physical injury must be more than de minimis but need not be significant."); *Parker v. Dubose*, 2013 WL 4735173, *2 (N.D. Fla. Sept. 3, 2013) (taking the plaintiff inmate's allegations as true, the claim is barred by § 1997e(e) because allegations of a black eye, bloody lip, scrapes, abrasions, and back pain do not amount to more than de minimis physical injury and are not sufficient to meet the requirements of the PLRA).

The PLRA § 1997e(e) requires dismissal of any claim for emotional or mental damages because the allegations of physical injury are de minimis.

## III.   Defendant Chambers is entitled to immunity

Defendant Chambers is also entitled to qualified immunity on the excessive force claim which is made against him in his individual capacity.[5]   Qualified

---

[5]Any claim against Defendant Chambers for damages in his official capacity is barred by absolute immunity by the Eleventh Amendment immunity. *Lancaster v. Monroe Cnty.*,

immunity shields governmental officers from "liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (Qualified immunity is "immunity from suit rather than a mere defense to liability") (internal citation omitted).

Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam).

Defendant Chambers was clearly acting within the scope of his discretionary authority when he was clearing the hall to move a death row inmate to healthcare and responding to Plaintiff's disobedience and disturbance and safety threat she was creating during that process. Because Plaintiff cannot satisfy the first prong of demonstrating that a constitutional violation has occurred, Defendant Chambers is

116 F.3d 1419, 1429 (11th Cir. 1997) ("Alabama state officials are immune from claims brought against them in their official capacities.").

17

entitled to qualified immunity. *E.g., Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009) (per curiam) (in absence of evidence that Gilstrap acted maliciously and sadistically, pretrial detainee failed to show any constitutional violation and summary judgment based on qualified immunity); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990) (holding that summary judgment should have been granted based on qualified immunity because plaintiff failed to establish a constitutional violation where the undisputed evidence demonstrated the need for force and only minimal injuries).

Because Plaintiff cannot demonstrate the violation of a constitutional right that was clearly established, Defendant Chambers is entitled to qualified immunity.

## CONCLUSION

Plaintiff's lawsuit should be dismissed in accordance with PLRA § 1997e(a), due to Plaintiff's failure to exhaust administrative remedies that were available at Tutwiler. Her complaint should have been resolved through the grievance system without resorting to the court for the requested relief. Her claim does not constitute Eighth Amendment excessive force, the PLRA §1997e(e) bars her claim for damages, and Defendant Chambers is entitled to qualified immunity under the circumstances of this case.

Respectfully submitted,

*/s/ Steven K. Herndon*
STEVEN K. HERNDON
(ASB-0093-O74S)
Attorney for Defendant Chambers

Herndon Law PC
1430 I-85 Parkway, Suite 234
Montgomery, AL  36106
Telephone: (334) 386-3848
Facsimile: (334) 386-3852
steve@herndon.law

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April 2022, I have served a copy of the foregoing on all parties by using CM/ECF or by U.S. mail:

LaToya M. Moore
AIS# 265588
ADOC TUTWILER
Tutwiler Prison for Women
8966 US Highway 231 North
Wetumpka, AL 36092

Benjamin H. Albritton
Assistant Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Ben.Albritton@AlabamaAG.gov

*/s/ Steven K. Herndon*